UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER E. YONKA,

                    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____/

Case No. 20-11777

Nancy G. Edmunds
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 17, 18)**

Plaintiff Heather Yonka brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance Benefits and

Supplemental Security Income under the Social Security Act.  This matter is before

the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 17), the Commissioner's cross-

motion for summary judgment (ECF No. 18), Plaintiff's reply (ECF No. 19) and

the administrative record (ECF No. 14).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's

motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Yonka alleges her disability began on January 1, 2017, at the age of 35.[1] (ECF No. 14, PageID.58).  She filed her applications for disability benefits on August 24, 2017.  In her disability report, she listed a number of ailments which negatively impacted her ability to work.  The ailments included: severe low back pain with left sided sciatica, disc bulging at L4-5 and L5-S1, trouble sleeping, impaired concentration, depression, rheumatoid arthritis, and fibromyalgia.  (*Id*.). Her application was denied at the initial level on April 2, 2018.  (*Id.* at PageID.58).

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (*Id.* at PageID.165-66).  On April 18, 2019, ALJ Andrew G. Sloss held a hearing, at which Plaintiff and a vocational expert ("VE"), Ms. Lorey, testified.  (*Id.* at PageID.78-96).  On April 30, 2019, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at PageID.58-70).

---

[1] Yonka requested that her alleged onset date be amended to June 15, 2017.  (ECF No. 14, PageID.330). The ALJ did not amend her onset date.  Plaintiff does not argue error, and it appears there was no prejudicial error, in the ALJ's failure to amend the alleged onset date.

Subsequently, Plaintiff submitted a request for review of the hearing decision.  On May 18, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.42-46).  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 30, 2020.

**B.    The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2017, the alleged onset date. (ECF No. 14, PageID.60).  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia and degenerative disc disease.  (*Id.* at PageID.61).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.63). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC "to perform light work . . . except the claimant can occasionally climb ramps or stairs and balance."  (*Id.* at PageID.63-64).  At **Step 4**, the ALJ determined that Plaintiff was able to perform past relevant work as a retail

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

sales clerk and a photography sales clerk as those jobs are generally performed. (*Id.* at PageID.67-68). In the alternative, at **Step 5**, the ALJ found other jobs Plaintiff could perform that exist in significant numbers in the national economy, such as a marker, a router, and an inspector/hand packager. (*Id.* at PageID.68-69). Therefore, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 1, 2017, the alleged onset date, through the date of the decision. (*Id.* at PageID.69).

### C.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

5

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

Plaintiff's arguments on appeal are based upon the medical evidence regarding her lower back and pain radiating down her left leg. After trying various methods of non-surgical treatment, including pain medication, physical therapy,

6

and chiropractic care, Plaintiff underwent surgery during June 2018 on her spine. After a period of some improvement after the surgery, she contends that by January 2019 her symptoms returned, which necessitated a second back surgery later that year.

Plaintiff's brief is styled as raising one argument on appeal—the ALJ failed to properly evaluate the post-surgery restrictions and need for additional surgery opinions from surgeon Dr. Park. Also, while not entirely clear, it appears she advances an additional argument the ALJ should have found that her statements of disabling pain consistent because she had two back surgeries. (ECF No. 17). These arguments are addressed below.

Plaintiff also argues the Appeals Council erred in denying review of her case and in declining to accept a June 2019 letter from Dr. Park confirming Plaintiff needed a second surgery on her back. The undersigned will not address this argument as "[a]n Appeals Council order denying review is not . . . a reviewable order." *Meeks v. Sec'y of Health & Human Servs.*, 996 F.2d 1215 (Table), 1993 WL 216530 (6th Cir. June 18, 1993); *Muszynski v. Comm'r of Soc. Sec.*, 2011 WL 1899336, at *8 (E.D. Mich. Mar. 24, 2011), *report and recommendation adopted*, 2011 WL 1899290 (E.D. Mich. May 19, 2011) ("Plaintiff asks this Court to review the Appeals Council's decision to deny review and this Court is not authorized to

do so, as it is the ALJ's Decision which became the final and reviewable decision of the Commissioner.").

1.    Dr. Park's Post-Operative Restrictions

As mentioned, Plaintiff had tried various methods of conservative treatment, such as pain medication, chiropractic care, physical therapy, injections, and radiofrequency ablation but was unable to find long-lasting pain relief. (*See, e.g.*, ECF No. 14, PageID.347, 459). A December 22, 2017, MRI revealed L5-S1 moderate disc building with associated posterior endplate osteophytes. (*Id.* at PageID.485). Plaintiff underwent a CT scan of her lumbar spine on April 16, 2018, which revealed moderate to severe narrowing of the L5-S1 disc and disc bulging at L4-L5 and L5-S1. The scan also revealed moderate to severe stenosis of the bilateral L5-S1 neural foramina secondary to disc building and reactive vertebral body spurring. (*Id.* at PageID.518). Thereafter, during May 2018, Plaintiff began treating with orthopedic surgeon Dr. Daniel Park. Dr. Park reviewed the April 16, 2018 CT scan and noted non-operative treatment failed to improve Plaintiff's condition. On June 20, 2018, Dr. Park performed L5-S1 bilateral anterior lumbar interbody fusion with instrumentation. (ECF No. 14, PageID.498). Plaintiff presented to the emergency department on June 26, 2018, six days after the surgery, complaining of worsening pain. (*Id.* at PageID.548). X-

rays did not show any abnormality in the surgical site.  (*Id.* at PageID.550, 556). She was discharged the next day.

Following Plaintiff's surgery, Dr. Park provided post-operative restrictions, titled "Discharge Instructions."  Dr. Park restricted Plaintiff's activity, in pertinent part, as follows: no lifting more than 10 pounds until advised by the doctor; avoid lifting objects above waist level; keep her spine straight; never bend at the waist; do not twist, pull, or push; "continue to gradually increase your activity;" several shorts walks both inside and outside the home was encouraged; she may tire easily so she was advised to plan frequent rest periods; she was to limit climbing stairs to twice a day "at first" and to use handrails; and she was "**not allowed to drive**" a car.  (ECF No. 14, PageID.537-38) (emphasis in original).  The instructions also included incision care and pain management.

The ALJ evaluated the restrictions as opinion evidence.  He found Dr. Park's restrictions "not persuasive."  The ALJ concluded there was no indication the restrictions would be permanent and "outlive the normal recuperation period following this type of surgery."  (ECF no. 14, PageID.65).  Plaintiff argues the ALJ gave no rationale for this finding and the ALJ's discussion of the restrictions did not comply with the regulations.  (ECF No. 17, PageID.576).

When evaluating medical opinion evidence, the ALJ is not required to defer or give any specific evidentiary weight to any medical opinion, even those from

treating sources, pursuant to 20 C.F.R. § 416.920(c).  ALJs must evaluate the "persuasiveness" of medical opinions by considering five factors: supportability, consistency, relationship with the claimant, specialization and "other factors that tend to support or contradict a medical opinion."  § 416.920c(c)(1)-(5).  The "other factors" include the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  § 416.920c(c)(5).  The "most important factors" are the supportability and consistency of the opinion.  § 416.920c(b)(2).

The undersigned finds no error in the ALJ's treatment of Dr. Park's post-operative restrictions.  As the ALJ stated, there was indeed no indication those restrictions were described as being permanent.  This is evident both from the face of the document and from subsequent treatment notes.  The discharge instructions bear all the indicia of temporary, post-operative care instructions.  Notably, the title of the document is "Surgery Discharge Instructions."  Further, the language used throughout the document references temporary restrictions.  For example, Plaintiff was limited to lifting no more than 10 pounds "until advised by your doctor," and she should "continue to gradually increase" her activity, and she should only climb stairs twice a day "at first."  (ECF No. 14, PageID.537).  Plaintiff initially was "**not allowed to drive**," (*id.*) (emphasis in original), yet she testified in April 2019 she was able to do so (*id.* at PageID.80).  Moreover, portions of the discharge summary

10

may not have been relevant to Plaintiff.  For instance, the document reads, "If your surgeon instructs you to wear a brace see below[.]"  (*Id.* at PageID.538).  In other words, the discharge instructions were not necessarily tailored to Plaintiff's functional capacity.  For these reasons, the ALJ did not err in his assessment of the restrictions—there was no indication in the document itself that the restrictions were intended to be anything other than temporary.

Moreover, the follow-up treatment notes suggest the bulk of the restrictions, if not all, were no longer relevant.  In her August and October 2018 follow-up appointments, Plaintiff was noted to be doing well and reported pain as a three out of ten.  At both follow-up visits, objective examination of Plaintiff's spine revealed no tenderness to palpation, no step-offs, normal range of motion, reflexes in the extremities were 2/4, negative Spurling test, negative femoral stretch test, and negative straight leg raise test, sensation was intact in all major groups, motor strength was 5/5 throughout, and the wound was healed.  (ECF No. 14, PageID.505, 507).  Dr. Park refilled Plaintiff's pain medication and referred her to pain management and physical therapy.  Nothing in these follow-up notes indicates the discharge instructions were intended to be permanent.  Notably, it is not clear that all the post-operative restrictions would apply to a person who has normal range of motion, normal motor strength, and a healed wound.  The ALJ's

conclusion is supported by the document itself and the normal objective examinations following her surgery.

Plaintiff contends the ALJ erred because there is no medical opinion stating the restrictions were not permanent and by January 2019 her symptoms had returned.  The circumstances presented here are similar to those in *Holloway v. Comm'r of Soc. Sec.*, 2015 WL 3970818 (M.D. Tenn. June 30, 2015).  At issue in *Holloway* were the restrictions in the plaintiff's discharge instructions following hospitalizations for a heart catheterization and stent placement.  After the first procedure, the plaintiff's physician restricted her to bed rest with minimal activity and recommended following up with the treating cardiologist in one week.  Later, following the second procedure, the plaintiff's physician restricted her to lifting no more than five pounds and to minimal exercise and activity.  *Id.* at *9.  The plaintiff argued that "in the absence of any evidence to the contrary," such restrictions should reasonably be deemed permanent.  The court rejected the plaintiff's argument as specious, concluding that even though the restrictions were not explicitly labeled "temporary," they were given in the context of a "discharge summary," alongside other post-operative wound care, diet, and follow up appointment instructions.  Instead, the court concluded that "in the absence of any indication that these were intended to be enduring restrictions, the ALJ was fully justified in not analyzing them as treating physician opinions."  *Id.* (citing

12

*Lawrence v. Colvin*, 2014 WL 3512603, at *8 (D. Or. July 10, 2014)) ("The Court finds the ALJ reasonably determined that plaintiff's post-surgical limitations were intended to be temporary, such that they did not need to be incorporated into the RFC.  Discharge instructions are typically for a fixed duration; by definition, they relate only to the immediate post-procedural period.").

Here, the ALJ appropriately declined to find the restrictions persuasive because of their temporary nature.  The ALJ was not required to obtain a medical opinion on whether the restrictions ultimately became permanent.  It was Plaintiff's burden to put forth sufficient evidence to prove her disability.  The fact that a CT scan in January 2019 showed non-union and Dr. Park later performed another surgery does not change the nature of the discharge instructions nor the normal objective examinations performed in August and October 2018.  Even if the purported return of symptoms in January 2019 and later second surgery constitute substantial evidence in support of Plaintiff's position, as demonstrated above, there is substantial evidence in support of the ALJ's decision regarding Dr. Park's restrictions, and thus the decision should be affirmed.

Finally, though the ALJ did not expressly discuss the supportability or consistency of the restrictions with the other medical evidence, in this instance this is not cause to remand.  First, it is not altogether clear the ALJ was required to assess these factors in evaluating post-surgery discharge instructions.  Second, the

ALJ's discussion of the medical evidence, especially the follow-up treatment, sufficiently indirectly attacked the supportability and consistency of the restrictions because those treatment notes do not suggest Plaintiff would be limited in the same manner as she was immediately following the surgery.

In short, the undersigned finds the ALJ's conclusion on Dr. Park's post-operative restrictions should be affirmed.

2.      Dr. Park's Statement Regarding Second Surgery

At the April 18, 2019 administrative hearing, Plaintiff testified that Dr. Park suggested another surgery on her back was necessary.  She was scheduled to see Dr. Park again during May 2019.  (ECF No. 14, PageID.90).  After the ALJ issued his decision on April 30, 2019, Plaintiff submitted a note from Dr. Park to the Appeals Council in which he stated "[Plaintiff] is scheduled to have surgery on August 19th, 2019." (*Id.* at PageID.54).  The Appeals Council declined to review Plaintiff's case and did not accept the note.

Plaintiff contends this matter should be remanded for consideration of the statement from Dr. Park.  (ECF No. 19, PageID.607-09).  The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)).  Nevertheless, the

Court may remand the case for further administrative proceedings if a plaintiff can show the evidence is "new" and "material" and that she had "good cause" for not presenting it in earlier proceedings. *Id.* at 357. This is referred to as a sentence six remand pursuant to 42 U.S.C. § 405(g). According to § 405(g), "evidence is only new if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). A plaintiff shows "good cause" by demonstrating a reasonable justification for failing to acquire and present the evidence for inclusion in the ALJ's hearing. *Id.* "'[G]ood cause' . . . is not established solely based on the fact that the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Estrada v. Comm'r of Soc. Sec.*, 2017 WL 4106247, at *5 (E.D. Mich. Aug. 4, 2017) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

It does not appear the evidence can be deemed "new" in this instance, and Plaintiff has failed to establish good cause for not submitting the note sooner. On January 17, 2019, approximately three months prior to the administrative hearing,

15

Dr. Park reviewed a CT scan and noted Plaintiff may need a second surgery. Although Plaintiff did not obtain the note from Dr. Park indicating the surgery had been scheduled to occur until June 28, 2019, it appears she was aware she needed the surgery prior to the hearing and could likely have obtained the note when she was made aware.  Moreover, she did not ask the ALJ for time to obtain and submit the note, nor did she adequately explain to the Court why she could not have obtained the note sooner.  Further, the mere fact the note was not created until two months after the hearing decision was issued does not establish "good cause."  *See id.*

But even if the note was "new" and she had good cause for not submitting it sooner than June 2019, the undersigned is not convinced the note is "material." First, the note is not a medical opinion the ALJ would be required to evaluate.  A medical opinion is a "statement . . . about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(b)(6), 416.913(a)(2).  Dr. Park's notation of the scheduled surgery is not a statement on Plaintiff's functional capacity.  Second, even acknowledging the fact that Plaintiff required and was scheduled to have a second surgery does not alter or detract from the substantial evidence in support of the ALJ's decision with regard to the post-operative restrictions.  The ALJ reviewed the CT scan notation from Dr. Park, in which Dr. Park stated Plaintiff may need additional surgery for the nonunion, but still concluded the restrictions

were not persuasive.  In effect, Plaintiff is asking the Court to reweigh the medical evidence, which the Court cannot do.  *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("[W]e  do not try the case de novo, [or] resolve conflicts in evidence. . . ."); *Mullins v. Sec'y of Health & Human Servs*., 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the [Commissioner].").  The ALJ's decision with regard to Dr. Park's restrictions is supported by substantial evidence.

### 3.    Other Arguments

Plaintiff made reference to the argument that the CT scan from January 2019 indicating the first surgery failed and she required a second surgery later that year required the ALJ to credit her statements of disabling pain.  (ECF No. 17, PageID.575).  More specifically, she maintains the ALJ did not provide any analysis as to why the CT scan and second surgery would not be consistent with Plaintiff's testimony of disabling pain.  It is understandable the Commissioner did not address this argument in light of the cursory way in which it was waived.  Notwithstanding, as  there was some development of the argument, the undersigned will address it.

The relevant regulation provides that the ALJ will evaluate a claimant's subjective statements "in relation to the objective medical evidence and other evidence" to determine "whether there are any inconsistencies in the evidence and

the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).  This provision further provides that a claimant's subjective statements "will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence."  *Id.*

The ALJ evaluated Plaintiff's subjective statements in relation to the medical evidence, which at the time of the decision included Dr. Park's analysis of the CT scan from January 2019.  The ALJ began his discussion with Plaintiff's subjective statements followed by  a recitation of the pertinent medical evidence. (ECF No. 14, PageID.64-67).  He discussed the non-surgical treatment modalities including medications, therapy, and injections.  The ALJ discussed x-rays and MRIs which revealed moderate changes and were characterized as "relatively benign," and an EMG study which was normal in the lower extremities.  (*Id.* at PageID.65).  He discussed Plaintiff's back surgery during June 2018 and the August and October 2018 follow-up notes which record improvement in symptoms and functionality.  The ALJ ended the discussion of the treatment notes by acknowledging the January 2019 CT scan which showed nonunion of L5-S1.  In light of the medical evidence—which "generally supports" Plaintiff's complaints

of low back pain—the ALJ concluded Plaintiff's statements of disabling pain were not entirely consistent with the medical evidence. (*Id.* at PageID.64-67). This conclusion is supported by substantial evidence.

Plaintiff has not explained why the January 2019 CT scan should have altered the ALJ's credibility determination, especially in light of the fact she does not challenge the ALJ's treatment of her subjective statements in relation to the remainder of the evidence. It is not clear that a finding of nonunion after surgery would invalidate the prior medical records showing normal objective examination from August and October 2018, or otherwise by itself render her subjective statements entirely credible. Even if the CT scan can be viewed as substantial evidence in support of Plaintiff's subjective statements, because substantial evidence supports the ALJ's decision it must be affirmed.

Finally, in the conclusion to her opening brief, Plaintiff stated "the residual functional capacity assessment provided by ALJ Sloss is not supported by any substantial evidence of record requiring reversal." (ECF No. 17, PageID.581). This argument is without any further factual or legal development, and therefore the undersigned finds it is waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125

F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)).

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment (ECF No. 18), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 28, 2021            s/Curtis Ivy, Jr.
                                Curtis Ivy, Jr.
                                United States Magistrate Judge